1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    NARINDER KHATKAR,                          No.  2:14-cv-0079 KJN P

12                   Petitioner,

13           v.                                   ORDER AND

14    CALIFORNIA DEPARTMENT OF                    FINDINGS & RECOMMENDATIONS
      CORRECTIONS AND
15    REHABILITATION,

16                   Respondent.

17

18           Petitioner is a state prisoner, proceeding through counsel, with a petition for writ of

19    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his felony conviction for

20    assault on the grounds of ineffective assistance of counsel, contending that his defense attorney

21    failed to properly ascertain or advise him of the immigration consequences of his plea.

22           Pending before the court is respondent's motion to dismiss, in which respondent argues

23    that the petition is time-barred.

24           After carefully reviewing the record, the undersigned recommends that respondent's

25    motion be granted and that the petition be dismissed due to petitioner's failure to meet the

26    applicable statute of limitations.

27    ////

28    ////

                                                    1

1    I. Background

2           On March 20, 2009, petitioner, who was then 18 years old, was convicted by the Sutter

3    County Superior Court of violating California Penal Code § 245(a)(2), which makes it a crime to

4    "commit an assault upon the person of another with a firearm."  (ECF No. 1 at 1; ECF No. 1-2 at

5    38.)  The conviction was the result of a plea bargain; petitioner entered a conditional plea of no

6    contest to the charge.  (ECF No. 1 at 1; ECF No. 1-2 at 45.)  The plea form included the following

7    statement:

8                          **Immigration Consequences**

9                   I understand that if I am not a citizen of the United States, I will be
                    deported from the country, denied citizenship, and denied re-entry
10                  into the United States.

11   (ECF No. 1-2 at 43.)  Petitioner's initials appear next to this statement on the form.  (Id.)

12   Petitioner's defense counsel, Mr. Mandeep Singh Sidhu, signed a provision, entitled "Defendant's

13   Statement," located at the end of the plea form, which provides:

14                  I am the attorney for the defendant.  I reviewed this form with my
                    client.  I have explained each of the items in the form, including the
15                  defendant's constitutional and statutory rights.  I have answered all
                    the defendant's questions with regard to those rights, the other
16                  items in this form, and the plea agreement.  I have discussed the
                    facts of the case and explained the consequences of the plea.  I have
17                  discussed the nature and elements of the offenses, allegations and
                    enhancements, any possible defenses to them, the effect of any
18                  prior convictions, allegations and enhancements, and the
                    consequences of the plea.  I concur in the plea and admissions and
19                  join in the waiver of defendant's constitutional and statutory rights.
                    I hereby stipulate that there is a factual basis for the plea.
20

21   (Id. at 46.)

22          The plea form sets forth the following factual basis for the plea: "On 2-8-09, in Sutter

23   County, [petitioner] did aid and abet another person who did commit an assault with a firearm by

24   driving the vehicle while the other person fired a handgun at a person."  (ECF No. 1-2 at 45.)  At

25   sentencing, his attorney explained that petitioner was in a store with a two friends when an

26   altercation broke out between those friends and two other individuals; surveillance videos show

27   that petitioner stepped away from the altercation and eventually went to his car; his friends later

28   joined him in the car, and thereafter, the shooting occurred.  (ECF No. 1-3 at 14.)

On April 24, 2009, petitioner was sentenced to one year in county jail, followed by three years of formal felony probation.  (ECF No. 1-3 at 18.)  According to the transcript, no mention was made of immigration consequences at the sentencing hearing.  (ECF No. 1-3 at 10-22.)

In August 2009, petitioner, through Mr. Sidhu, filed a motion to modify his sentence from 365 days in county jail to 364 days.  (ECF No. 1-3 at 45.)  Petitioner filed a declaration in support of this motion, which provides in pertinent part:

> Since pronouncement of judgment, INS has placed a hold on me due to my immigration status.  I am a green card holder making me a legal resident.  I have spoken to an immigration attorney who informed me that if my sentence were modified to 364 days, I would have a good chance of not getting deported.

(ECF No. 1-3 at 46.)  The Sutter County Superior Court granted petitioner's motion to modify his sentence.  (ECF No. 1-3 at 25.)

On April 2, 2010, petitioner admitted that he violated a term of his probation, requiring that he obey all laws, by driving with a blood alcohol content of 0.08% or greater, in violation of California Vehicle Code § 23152(b).  (ECF No. 1-3 at 29-36.)  Petitioner was sentenced to 3 years in state prison for violating probation.  (Id.)

Petitioner was subsequently served notice, dated January 24, 2011, of removal proceedings stemming from this sentencing.  (ECF No. 18-1 at 1.)  These were the first removal proceedings to commence against petitioner as a result of his conviction.  (Id.)  Shortly thereafter, petitioner consulted with Teresa Coles-Davila, an immigration attorney based in San Antonio, Texas.  (Id.)  Ms. Coles-Davila describes the following conversation with petitioner:

> I met with [petitioner] and advised him that his conviction of section 245(a)(2) constituted an aggravated felony as a result of his state prison sentence of three years, which made him deportable and ineligible for nearly every form of discretionary relief that would apply to his circumstances.  In addition, I explained, even if he was technically eligible for some forms of discretionary relief after conviction of an aggravated felony, such conviction made such relief practically impossible to obtain.  He informed me that he believed he was no longer deportable after his sentence was modified to 364 days.  I explained to him that his sentence for his violation of probation counted for purposes of determining whether his section 245(a)(2) conviction constituted an aggravated felony. It was clear to me from my conversation with [petitioner] that he was not aware, prior to our conversation, that his admission to a violation of probation and sentence on such violation had these

1   devastating consequences.

2   (Id.)  Ms. Coles-Davila avers that she subsequently represented petitioner in removal proceedings.

3   (Id.)

4          On July 19, 2011, a federal Immigration Judge denied petitioner's application to prevent

5   his deportation to India, his country of citizenship.  (ECF No. 1-4 at 70.)  On November 30, 2011,

6   the federal Board of Immigration Appeals issued an opinion affirming this decision.  (ECF No. 1-

7   4 at 70-72.)

8          Petitioner did not directly appeal his conviction or sentence.  (Id. at 2.)  Instead, on March

9   21, 2012, he filed a petition for writ of habeas corpus with the Sutter County Superior Court.

10  (ECF No. 1 at 3.)   On April 2, 2012, that court denied the petition without prejudice, citing

11  petitioner's failure to address his acknowledgment of potential immigration consequences on his

12  plea form.  (ECF No. 1 at 3; ECF No. 1-3 at 39.)  On May 2, 2012, petitioner filed another

13  petition for writ of habeas corpus with the Sutter County Superior Court.  (ECF No. 1 at 4.)   On

14  May 10, 2012, that court denied the second petition, citing In re Lawler, 23 Cal. 3rd 190, 194

15  (1979) (reversing habeas grant by San Diego County Superior Court due to petitioner's failure to

16  establish a prima facie case for relief).  (ECF No. 1 at 4; ECF No. 1-3 at 48.)

17         On March 25, 2013, petitioner filed a petition for a writ of habeas corpus with the

18  California Court of Appeal for the Third Appellate District.  (ECF No. 1-3 at 51.)  On July 2,

19  2013, that court denied the petition summarily.  (ECF No. 1-3 at 53.)

20         On September 16, 2013, petitioner filed a petition for a writ of habeas corpus with the

21  California Supreme Court.  (ECF No. 1 at 5; ECF No. 1-4 at 2.)  On October 23, 2013, that court

22  denied the petition summarily.  (ECF No. 1-4 at 47.)

23         Petitioner has filed a declaration herein in which he avers as follows.  (ECF No. 1-2 at 1-

24  3.)  He states that he is a 22-year-old legal permanent resident who was born in Punjab, India.

25  (Id. at 2.)  He has lived in the United States since the age of three.  (Id.)  The entirety of his family

26  now resides in the U.S.  (Id.)  He has no family, friends, or other contacts in India who would be

27  willing to provide him with shelter, support, or assistance.  (Id.)

28  ////

4

Petitioner also filed a letter from a psychologist, dated June 15, 2011, documenting the results of a clinical examination.  (ECF No. 1-2 at 8.)  According to the letter, at the time of his arrest for the offense of which he was convicted, petitioner was a senior in high school receiving special education services due to an IQ of 69 and other cognitive and intellectual deficits.  (Id. at 6-8.)  Another evaluation, performed by a clinical neuropsychologist, details various mental health conditions, cognitive disabilities, and an estimated IQ of 75.  (ECF No. 1-2 at 16, 21, 22.)

II.  Standards

A.  Standard re: Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court. . . ."  Id.  The Court of Appeals for the Ninth Circuit has referred to a respondent's motion to dismiss as a request for the court to dismiss under Rule 4 of the Rules Governing § 2254 Cases.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (1991).  Accordingly, the court will review respondent's motion to dismiss pursuant to its authority under Rule 4.

In deciding a motion to dismiss, the court "must accept factual allegations in the [petition] as true and construe the pleadings in the light most favorable to the non-moving party."  Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1030 (9th Cir. 2008)).  In general, exhibits attached to a pleading are "part of the pleading for all purposes . . . ."  Hartmann v. Cal. Dept. of Corr. and Rehab., 707 F. 3d 1114, 1123 (9th Cir. 2013) (quoting Fed. R. Civ. P. 10(c)).

B.  Standard re: AEDPA Statute of Limitations

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted.  Section 2244(d)(1) of Title 8 of the United States Code provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such

review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C. § 2244(d)(2).

Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C. § 2244(d)(2).  Generally, this means that the statute of limitations is tolled during the time after a state habeas petition has been filed, but before a decision has been rendered.  Nedds v. Calderon, 678 F.3d 777, 780 (9th Cir. 2012).

III.  Analysis

Petitioner raises a single ground for grant of his petition for writ of habeas corpus:

> Trial counsel failed to determine Mr. Khatkhar's immigration status, to research the immigration consequences of his no contest plea to Cal. Pen. Code sec. 245(a)(2), and to advise Mr. Khatkhar of those consequences.  Had counsel researched the immigration consequences of such plea he would have found this plea and a sentence of one year or more, even after sentencing for a violation of probation, would make Mr. Khatkhar an aggravated felon, and hence deportable, inadmissible, ineligible for discretionary relief from deportation, and subject to other devastating consequences. Mr. Khatkhar has strong ties to the United States, but no family or friends, or way to survive in India, his country of citizenship.  If Mr. Khatkhar had known that he would be permanently banished from the United States and separated from his family with no hope of return to the United States for the rest of his life as a result of such plea, he would not have entered this plea but would have

6

proceeded to trial.  Mr. Khatkhar is now subject to a final order of deportation, all discretionary relief from deportation has been denied, and he is inadmissible, as a result of his plea and conviction of Pen. Code sec. 245(a)(2).

(ECF No. 1 at 5.)

Respondent moves to dismiss the petition on the grounds that it is time-barred. Respondent's argument is as follows.  On April 2, 2010, petitioner was sentenced to state prison for a probation violation.  Petitioner did not file a direct appeal of this sentence.  Under California law, a criminal defendant must file an appeal within 60 days "after the rendition of the judgment or the making of the order being appealed." Cal. R. Ct. 8.308 (2010).[1]  As a result, petitioner's conviction and sentence became final on June 2, 2010.  Absent any tolling, AEDPA's one-year statute of limitations for the filing of a federal habeas petition ran on June 1, 2011.  However, petitioner did not file his first petition at the state level until March 21, 2012, 293 days after June 2, 2011, at which point – according to respondent – it was time-barred.  (See Mot. to Dismiss, ECF No. 12 at 3-5.)

Respondent's argument has some persuasive value.  The record shows that, by April 2, 2010, petitioner had been notified that he was under an INS hold, and that, on the advice of an immigration attorney, he had successfully obtained a reduction in his jail sentence to 364 days in order to enhance his chances of remaining in the United States.  On April 2, 2010, petitioner was sentenced to three years in state prison – a period longer than the one-year jail term which the immigration attorney had previously advised him might trigger adverse consequences for his status as a legal permanent resident.   Moreover, the probation terms pursuant to which petitioner was sentenced were a direct consequence of the conditional plea that he had entered while being represented by counsel.  In respondent's view, by April 2, 2010, no further due diligence was necessary to discover the factual predicate of the claim presented:  the fact that the terms of petitioner's plea, one he had entered on the advice of his counsel Mr. Sidhu, might jeopardize his

---

[1] "The California Rules of Court have the force of statute to the extent that they are not inconsistent with legislative enactments and constitutional provisions." Silverbrand v. Cnty. of Los Angeles, 46 Cal. 4th 106, 125 (2009) (internal quotation and citation omitted).

immigration status.

Nevertheless, given the gravity of the immigration consequences facing petitioner,[2] the undersigned fully considers each of petitioner's arguments as to why his petition is not barred by AEDPA's statute of limitations.  These arguments, based on statutory and/or equitable tolling, are considered in turn below.

In his petitioner, petitioner initially contends that the limitations period began running on April 24, 2012, "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  Petitioner justifies this date on the basis of the following facts.

On February 15, 2012, petitioner's criminal defense counsel, Mr. Sidhu, signed a declaration ("First Sidhu Declaration," ECF No. 1-3 at 42-43), which provides in pertinent part that:

- Mr. Sidhu advised petitioner to accept the prosecution's plea offer.  His primary goal in doing so was to avoid a state prison sentence for petitioner.  (First Sidhu Declaration ¶ 2.)

- Mr. Sidhu did not discuss immigration consequences of the plea with petitioner.  (Id. ¶¶ 2, 3.)

- Mr. Sidhu provided petitioner with the plea form and asked petitioner to read it, directing petitioner to inform him if there was any portion of the form that petitioner had questions about or did not understand.  Petitioner asked no questions about the paragraph with the immigration advisement, which petitioner initialed.  (Id. ¶ 3.)

- Mr. Sidhu was not aware at the time of the plea that the charge to which petitioner pled would constitute an aggravated felony for immigration purposes, and that as a result, petitioner would suffer mandatory deportation and exclusion, and be ineligible

---

[2] "We have long recognized that deportation is a particularly severe 'penalty.'"  Padilla v. Kentucky, 559 U.S. 356, 365 (2010) (quoting Fong Yue Ting v. United States, 149 U.S. 698, 740 (1893)).  "Preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence."  Id. at 368 (quoting INS v. St. Cyr, 533 U.S. 289, 322 (2001)).

for most forms of discretionary relief.  (<u>Id.</u> ¶ 5.)

- • Mr. Sidhu neither conducted any research into possible immigration consequences of the plea nor consulted with an immigration attorney regarding the subject.  (<u>Id.</u> ¶ 5.)

- • Mr. Sidhu became aware that petitioner was not a citizen of the United States, and of the plea's immigration consequences, only when an immigration hold was placed on petitioner.  (<u>Id.</u> ¶ 5.)

Petitioner's habeas counsel attached the First Sidhu Declaration to petitioner's first state habeas petition, filed with the Sutter County Superior Court on March 21, 2012.  (ECF No. 1-1 at 16.) On April 2, 2012, that court denied the petition without prejudice.  Afterwards, habeas counsel spoke to Mr. Sidhu, who provided new information that materially contradicts and/or augments information included in his prior declaration.  (ECF No. 1-1 at 16.)  This new information was memorialized in a declaration signed by Mr. Sidhu on April 24, 2012.  ("Second Sidhu Declaration," ECF No. 1-4 at 67-8.)  To wit:

- • Mr. Sidhu "regarded the advisement in the plea form as a *pro forma* advisement that was not actually applicable to [petitioner's] particular circumstances.  [Mr. Sidhu] was aware that [petitioner] had resided in the United States since he was a very young child.  [Mr. Sidhu] believed that [petitioner's] ties to the United States would protect him from any negative immigration consequences, notwithstanding the advisement." (<u>Id.</u> ¶ 3.)

- • Mr. Sidhu "was not aware that any sentence imposed on the Penal Code section 245(a)(2) conviction as a result of a violation of probation would be aggregated with the initial sentence for purposes of determining whether the offense constituted a crime of violence and an aggravated felony."  (<u>Id.</u> ¶ 4.)

Based on the foregoing, petitioner argues for April 24, 2012, as the first date on which the statute of limitations began to run.  Petitioner argues that these two facts "were not within either Mr. Khatkar's or [habeas] counsel's knowledge nor could they have been discovered in the exercise of reasonable diligence by them."  (ECF No. 1-1 at 16.)

////

9

1    Therefore, petitioner contends, statutory tolling ought to apply, as the facts adduced

2  demonstrate that April 24, 2012, is "the date on which the factual predicate of the claim or claims

3  presented could have been discovered through the exercise of due diligence."  28 U.S.C.

4  § 2244(d)(1)(D).  Petitioner's central argument is as follows:

5         [I]t is not the case that [petitioner] "could have discovered through
          the exercise of due diligence" within the meaning of
6         § 2244(d)(1)(D) that Mr. Sidhu would later be prepared to disclose,
          under penalty of perjury, that his declaration in the plea form that
7         he advised [petitioner] of the consequences of his no contest plea
          was false.  He could not have predicted that Mr. Sidhu would
8         contradict his former declaration in this manner until he actually
          received a signed declaration from Mr. Sidhu admitting this.
9

10  (Opposition, ECF No. 18 at 2.)

11    In order to accept petitioner's argument that the limitations period should not have begun

12  running until April 24, 2012, one would have to accept the proposition that he did not become

13  aware that he has been provided ineffective assistance of counsel (with regards to being advised

14  of the immigration consequences of his plea) until his attorney admitted as much under oath.

15    This proposition runs counter to AEDPA jurisprudence.  The Ninth Circuit has held that

16  the AEDPA limitations period begins to run "when the prisoner knows (or through diligence

17  could discover) the important facts, not when the prisoner recognizes their legal significance."

18  Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (quoting Owens v. Boyd, 235 F.3d 356,

19  359 (7th Cir. 2000)).  The factual predicate for an ineffective assistance of counsel claim becomes

20  apparent when "a petitioner has discovered (or with the exercise of due diligence could have

21  discovered) facts suggesting both unreasonable performance *and* resulting prejudice."  Id. at 1154

22  (emphasis in original).

23    In the instant case, the "important fact" is that defense counsel failed to advise petitioner

24  that he might face deportation based on the terms of his plea and his subsequent sentencing

25  thereunder.

26    Petitioner was served notice of removal proceedings, dated January 24, 2011.  (ECF

27  No. 18-1 at 1.)  Neither this notice nor its terms are before the court.  It is therefore unclear

28  whether the notice included information that petitioner's sentence for violating his probation

1    terms had triggered deportation proceedings.  Accordingly, it may be that, after having received

2    this notice, petitioner still "believed that he was no longer deportable after his sentence was

3    modified to 364 days" (Coles-Davila Declaration, ECF No. 18-1 at 1), and that deportation

4    proceedings had commenced in error.  Nevertheless, at some point between February and April

5    2011, petitioner met with Ms. Coles-Davila, who advised him that "his sentence for his violation

6    of probation counted for purposes determining whether his . . . conviction constituted an

7    aggravated felony."  (Id.)  Prior to this meeting, petitioner either knew that his revised sentence

8    might trigger deportation proceedings, or he did not.  If he did not know, then after the meeting,

9    he did know, and in so learning, simultaneously became aware that Mr. Sidhu, his defense

10   counsel, had failed to advise him of these immigration consequences.  The fact that Mr. Sidhu

11   later admitted, under oath, to having failed to advise petitioner is immaterial; the very fact that

12   petitioner was allegedly blindsided by the proceedings provided him with the requisite knowledge

13   of Mr. Sidhu's omission.  At that point in time, in other words, petitioner was aware of the facts

14   "suggesting . . . unreasonable performance" (that Mr. Sidhu had not advised him of the

15   immigration consequences of his plea and sentencing) and "resulting prejudice" (that he could be

16   deported).  Hasan, 254 F.3d at 1154.

17         Petitioner disputes this line of reasoning by analogizing his circumstances to those in Fusi

18   v. O'Brien, 550 F. Supp. 2d 167 (D. Mass. 2008).  The Fusi petitioner had sought a writ of habeas

19   corpus on grounds of ineffective assistance of counsel, which the respondent claimed was time-

20   barred.  The district court determined that the statute of limitations began to run on the date that

21   his criminal defense counsel signed an affidavit admitting, among other things, that he had

22   perjured himself at a hearing on a motion for a new trial almost seven years earlier.  Id. at 169.

23   According to the district court, the factual predicate to the petition could not have been

24   discovered by the petitioner before his counsel confessed to perjury and admitted the true facts

25   concerning his representation.  Id.

26         Fusi is readily distinguishable from the instant case.  While Mr. Sidhu admitted for the

27   first time in his April 24, 2012 declaration that he was unaware that the sentence imposed on

28   petitioner for violating probation would be considered "for purposes of determining whether the

1  offense constituted a crime of violence and an aggravated felony" (ECF No. 1-4 at 67),

2  Mr. Sidhu's admission of his lack of awareness is not the factual predicate to petitioner's claim.

3  The factual predicate is Mr. Sidhu's failure to advise petitioner as to the relevant immigration

4  consequences, an omission that was apparent even without the averments in the Second Sidhu

5  Declaration.  Unlike <u>Fusi</u>, the factual predicate of the instant petition does not rest on Sidhu's

6  admissions.

7          It is the undersigned's view that petitioner was on notice regarding Mr. Sidhu's failures at

8  the very latest between February and April 2011, when Ms. Coles-Davila, his immigration

9  counsel, advised petitioner of the immigration consequences of his sentencing.  Petitioner

10  attempts to rebut this argument by arguing as follows:

11          Even though Ms. Coles-Davila advised him in about April, 2011
            that the sentence on the violation of probation made him an
12          'aggravated felon', at that point he was in immigration court, with
            an immigration attorney, arguing that he was entitled to
13          discretionary relief from removal.  He reasonably believed he had
            defenses to removal that might prevail, with the result that he would
14          not be deported.  Thus, he could not take the position that
            Mr. Sidhu engaged in incompetent assistance of counsel by failing
15          to advise him that he would again be deported after his sentence
            was modified to 364 days until he received the BIA decision
16          affirming the lower court's order of deportation.

17  (Opposition, ECF No. 18 at 8.)

18          This argument is unavailing.  The fact that petitioner might have prevailed in his

19  immigration proceedings is immaterial to whether Mr. Sidhu did or did not meet the standard of

20  performance required of a criminal defense attorney when he advised petitioner as to the

21  consequences of his plea.  Interpreting the record in the light most favorable to petitioner, <u>Fayer</u>,

22  649 F.3d at 1064, it appears that Mr. Sidhu failed to advise petitioner both that he *could* be

23  deported or that he *would* be deported as a result of his revised sentence; in fact, petitioner

24  contends that Mr. Sidhu failed to advise him of any immigration consequences at all.  In <u>Padilla</u>

25  <u>v. Kentucky</u>, 559 U.S. 356 (2010), the Supreme Court recognized that, for purposes of assessing a

26  claim of ineffective assistance of counsel, an attorney's failure to advise a client that a plea

27  agreement carries a risk of deportation falls below the "objective standard of reasonableness"

28  required under <u>Strickand v. Washington</u>, 466 U.S. 668, 688 (1984).  "To satisfy this

12

1 responsibility . . . counsel must inform her client whether his plea carries a risk of deportation."

2 Padilla, 559 U.S. at 374.  The Padilla opinion distinguishes between scenarios in which

3 immigration law is succinct and straightforward (and, therefore, in which counsel would have a

4 "duty to give correct advice," id. at 369), and scenarios in which immigration law is unclear or

5 uncertain (in which case an attorney "need do no more than advise . . . that pending criminal

6 charges may carry a risk of adverse immigration consequences," id.).  In other words, under

7 petitioner's version of events, Mr. Sidhu failed to meet even the minimal standard expected of

8 defense counsel when uncertainty surrounds the immigration consequences of a plea.  This

9 omission is the basis of petitioner's ineffective assistance of counsel claim.  The presence or

10 absence of a Constitutional error by Mr. Sidhu is independent of whether petitioner prevailed in

11 his immigration proceedings.

12     In his opposition, petitioner advances a final argument for equitable tolling of the statute

13 of limitations until November 30, 2011, the date on which his deportation appeal was denied.  He

14 argues that he was unable to commence habeas proceedings earlier because (i) during this period,

15 he was in immigration custody and engaged in fighting his immigration case, and (ii) that he

16 "suffers from impaired intellectual functioning that prevented him from appreciating that he

17 possessed facts that could support a claim of ineffective assistance of counsel."  (Opposition, ECF

18 No. 18 at 10.)

19     Petitioner's first argument is inapt.  Equitable tolling is available under AEDPA only

20 when "extraordinary circumstances beyond a [petitioner]'s control make it *impossible* to field a

21 petition on time," and these extraordinary circumstances "were the *cause* of [a petition's]

22 untimeliness."  Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010) (emphasis in original)

23 (internal citations omitted).  Here, petitioner chose to devote his time and resources exclusively to

24 his immigration case rather than to seek habeas relief in a more timely fashion.  This was a

25 decision made by petitioner, rather than an "extraordinary circumstance beyond [his] control."

26 Id.  Petitioner's choice of legal strategy is not a basis for equitable tolling of AEDPA's statute of

27 limitations, as the Ninth Circuit has made clear that "an external force must cause the

28 untimeliness, rather than . . . merely oversight, miscalculation or negligence on the petitioner's

1  part . . . ." Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (internal quotation
2  omitted).

3        As for petitioner's cognitive impairments, Ninth Circuit precedent requires a habeas
4  petitioner who seeks equitable tolling on the basis of mental impairment to meet the following
5  standard:

6        [T]he district court must:  (1) find the petitioner has made a non-
       frivolous showing that he had a severe mental impairment during
7        the filing period that would entitle him to an evidentiary hearing;
       (2) determine, after considering the record, whether the petitioner
8        satisfied his burden that he was in fact mentally impaired;
       (3) determine whether the petitioner's mental impairment made it
9        impossible to timely file on his own; and (4) consider whether the
       circumstances demonstrate the petitioner was otherwise diligent in
10       attempting to comply with the filing requirements.

11  Bills, 628 F.3d at 1100-01 (internal citations omitted)).  Ultimately, "[t]he relevant question is:
12  Did the mental impairment cause an untimely filing?"  Id. at 1100 n.3.

13        The court finds that the evidence submitted by petitioner is insufficient to meet the first
14  Bills factor.  By August 2009, an immigration hold had been placed on petitioner as a result of his
15  original criminal sentence.  He then possessed sufficient cognitive capacity to move, through his
16  defense counsel, for a modification of his sentence from 365 days to 364 days in county jail.
17  (ECF No. 1-3 at 45.)  In his declaration in support of this motion, petitioner averred, "I have
18  spoken to an immigration attorney who informed me that if my sentence were modified to 364
19  days, I would have a good chance of not getting deported."  (ECF No. 1-3 at 46.)  Petitioner faced
20  similar circumstances in early 2011.  He was subject to deportation proceedings, and
21  consequently, consulted with an immigration attorney, Ms. Coles-Davila, who informed him that
22  these deportation proceedings were due to his sentence for violating his probation terms.  (ECF
23  No. 18-1 at 1.)  As discussed above, at this point, petitioner would have known that his defense
24  counsel, Mr. Sidhu, had failed to advise him of the immigration consequences of his lengthened
25  sentence.  The factual predicate for a habeas petition based on ineffective assistance of counsel
26  ought to have been apparent.  Petitioner has failed to make any showing that his cognitive
27  capacity was so impaired that he was unable to make this deduction.  Absent such a showing, the
28  court cannot proceed to an evidentiary hearing on the remaining three factors.  Bolstering this

1    conclusion is the fact that petitioner was not left to his own devices in assessing his situation, as

2    he was by then represented by immigration counsel.  Padilla, 559 U.S. 356, had been announced

3    approximately a year before, on March 31, 2010.  If, as Ms. Coles-Davila avers, it was evident at

4    their meeting that petitioner was unaware of the immigration consequences of his plea, she could

5    have advised him to proceed on a habeas petition as an alternative to, or in parallel with,

6    contesting the deportation proceedings.

7            Ms. Coles-Davila does not remember exactly when she met with petitioner, stating only

8    that it was "[s]ome time between February and April, 2011."  (ECF No. 18-1 at 1.)  Interpreting

9    this fact in the light most favorable to petitioner, it appears that the latest date on which he could

10   have discovered, through the exercise of due diligence, the factual predicate for a claim of

11   ineffective assistance of counsel was April 30, 2011.  Petitioner did not file his initial petition for

12   habeas relief until March 21, 2012, 326 days later.  (ECF No. 1 at 3.)  His petition with the

13   California Supreme Court was ultimately denied on October 23, 2013.  (ECF No. 1-4 at 47.)

14   Petitioner then filed his federal petition on January 13, 2014, 82 days afterwards.  Even accepting

15   petitioner's contention that he "is entitled to statutory tolling during the times his state court

16   petitions were pending in the state courts, as well as 'gap' tolling, as none of his state court

17   petitions were denied on untimeliness grounds," (Opposition, ECF No. 18 at 7) – a position that

18   respondent vociferously opposes[3] – petitioner has failed to meet AEDPA's one-year statute of

19   limitations.  Accordingly, the motion to dismiss should be granted.

20   IV.  Conclusion

21           In light of the foregoing, IT IS HEREBY ORDERED that:

22           1.  The Clerk of the Court shall appoint a district judge in this action; and

23           2.  Based on respondent's counsel's request (ECF No. 12 at 1 n.1), Jeffrey Beard,

24               Secretary of the California Department of Corrections and Rehabilitation, is

25               substituted as the respondent in this action.

26   _____

27   [3] Respondent argues that petitioner is not entitled to statutory tolling during the 318-day gap
     between the denial of his petition on May 10, 2012, by the Sutter County Superior Court, and the
     filing of his petition on March 25, 2013, with the California Court of Appeal for the Third

28   Appellate District. (Reply, ECF No. 24 at 12-14.)  Petitioner attributes this gap to a lack of funds.

1    IT IS HEREBY RECOMMENDED that:

2    1.    Respondent's motion to dismiss (ECF No. 12) be granted; and

3    2.    This action be dismissed.

4    These findings and recommendations are submitted to the United States District Judge

5  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

6  after being served with these findings and recommendations, any party may file written

7  objections with the court and serve a copy on all parties.  Such a document should be captioned

8  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

9  objections shall be filed and served within fourteen days after service of the objections.  The

10  parties are advised that failure to file objections within the specified time may waive the right to

11  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12    Should petitioner file objections, he may address whether a certificate of appealability

13  should issue in the event petitioner files an appeal of the judgment in this case.  See Rule 11,

14  Federal Rules Governing § 2254 Cases ("The district court must issue or deny a certificate of

15  appealability when it enters a final order adverse to the applicant").  A certificate of appealability

16  may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the

17  denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

18  Dated:  December 29, 2014

19

20  /khat0079.mtd
                                        KENDALL J. NEWMAN
                                        UNITED STATES MAGISTRATE JUDGE
21

22

23

24

25

26

27

28

                                16