1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                     FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    NARINDER SINGH KHATKARH,              No. 2:14-cv-0079 KJM KJN P

11                      Petitioner,

12         v.                               ORDER

13    XAVIER BECERRA, Attorney General of
      California,[1]
14
                        Respondent.
15

16

17              Petitioner is a former state prisoner, proceeding through counsel.  In a habeas

18    petition, petitioner challenges the legality of his 2009 conviction for assault with a firearm,

19    claiming that, because he suffered ineffective assistance of counsel, he unwittingly entered a no

20    contest plea to an offense constituting an aggravated felony without understanding the

21    consequences.  The aggravated felony ultimately rendered him deportable, and he is currently

22    subject to a final order of deportation with the high likelihood he will be deported upon his next

23

24    _____

      [1] As discussed at the end of this order, that petitioner is not incarcerated for this offense does not
25    moot the petition. *See Spencer v. Kemna*, 523 U.S. 1, 8–12 (1998) (courts may presume criminal
      conviction has continuing collateral consequences sufficient to avoid mootness).  It does appear,
26    however, no warden, jailer or probation officer is a proper respondent.  Accordingly, Xavier
      Becerra, the Attorney General of California, is hereby substituted as the properly named
27    respondent.  *See* Rule 2(b), Rules Governing Habeas Corpus Cases Under Section § 2254, 1975
      advisory committee's note (when petitioner is not incarcerated or on probation or parole, proper
28    respondent is the Attorney General).

                                            1

1 required check-in with immigration authorities this week, unless this court grants his petition.

2 After a status conference with counsel earlier this week to address petitioner's urgent request for

3 the court to resolve the petition now, the court has prioritized this matter in order to determine if it

4 can decide the petition on the record as submitted, fulfilling its duty to consider the merits of the

5 petition and respondent's opposition to granting the requested relief. Upon its review of the

6 record and the parties' briefing, the court has been able to carefully consider the matter. The

7 court has found it has jurisdiction to decide the petition and earlier today in an order entered on

8 the court's docket GRANTED the petition, VACATING petitioner's conviction. This order

9 explains the court decision, as promised.

10 I.       BACKGROUND

11          A.       Plea Hearing

12                   On March 20, 2009, while represented by counsel, petitioner pled no contest to

13 assault with a firearm in Sutter County Superior Court. As explained in more detail below,

14 petitioner's counsel had him sign a plea form before the hearing; the preprinted form included the

15 following statement: "I understand that if I am not a citizen of the United States, I will be

16 deported from the country, denied citizenship, and denied re-entry into the United States."

17 Felony Plea Form, ECF No. 1-2, at 43 (document in file of case number CRF-09-0405).

18 Petitioner's initials appear on a line next to this statement on the form. *Id.* Petitioner also signed

19 the Plea Form, on the same date as the plea hearing. *Id.* at 46. The Plea Form shows a

20 handwritten "X" just before petitioner's signature on a designated signature line. *Id.* During the

21 plea proceeding on March 20, 2009, neither the court nor the parties specifically addressed the

22 subject of immigration consequences. Plea Hr'g Tr., ECF No. 1-3, at 2-9. The court did call out

23 one item from the form, noting petitioner "initialed the entry about this being a strike offense."

24 *Id.* at 6.

25                   Because petitioner resides in the United States as a legal permanent resident and is

26 not a citizen of this country, his conviction subjects him to deportation. Pet., ECF No. 14.

27 Petitioner contends he is entitled to habeas relief here on the ground he was deprived of his

28 constitutional right to effective assistance of counsel. *Id.* at 25. Specifically, petitioner alleges

his attorney in the criminal case, Mandeep Singh Sindhu, failed to determine petitioner's immigration status, failed to investigate the immigration consequences of a no contest plea, and failed to advise petitioner that his conviction offense would constitute an aggravated felony, making him deportable, if petitioner was sentenced to 365 days or more, counting the initial sentence and in the aggregate time served upon any violation of probation or parole. *Id*. at 17.

B.      Sentencing

At petitioner's April 24, 2009 sentencing hearing in state court, the prosecution argued for a sentence of one year in custody. Sent'g Tr., ECF No. 1-3, at 17. Neither the court nor the parties mentioned immigration consequences at the sentencing hearing. *Id.* at 10–22. During the hearing, in comments suggesting an assumption petitioner was a citizen, defense counsel stated that petitioner

> understands if he violates probation in any way, shape, or form he's looking at potentially four years in state prison at 85 percent, and because . . . the circumstances of the crime are so serious, it's very likely that he might get the upper term if he was convicted – if he violated probation.
>
> So I'm asking your Honor to give [petitioner] a chance to prove that he can get through probation and be a law-abiding citizen.

*Id.* at 15. The court sentenced petitioner to one year in jail, and three years' probation. Plea Hr'g Tr., at 18.

In August 2009, petitioner, through Mr. Sidhu, filed a motion to modify the terms of his probation from 365 days in county jail to 364 days. Mot. for Modification of Probation Terms, ECF No. 1-3, at 45-46. The motion was prompted by the fact that petitioner's immigration status had become evident in light of an immigration hold placed during his jail term. Petitioner's declaration in support of the motion explains in pertinent part:

> Since pronouncement of judgment, INS has placed a hold on me due to my immigration status. I am a green card holder making me a legal resident. I have spoken to an immigration attorney who informed me that if my sentence were modified to 364 days, I would have a good chance of not getting deported.

Khatkarh Decl., ECF No. 1-3, at 46.

On August 21, 2009, the Sutter County Superior Court granted petitioner's motion to modify his sentence, reducing the jail term to 364 days. Modification of Probation Hr'g,[2] ECF No. 1-3 at 25.

C.     Probation Violation and Removal Proceedings

On April 2, 2010, petitioner's probation was revoked and he was sentenced to three years in state prison, based on his admission that he violated a term of the probation imposed at the time of sentencing by his driving with a blood alcohol content of 0.08 percent or greater, in violation of California Vehicle Code section 23152(b). Probation Violation Sent'g Tr., ECF No. 1-3, at 29–36. At the revocation hearing, petitioner again was represented by Mr. Sidhu and the record discloses no discussion of immigration issues. *Id.* Petitioner did not appeal the sentence on revocation.

On January 24, 2011, petitioner was served notice of removal proceedings stemming from the consequences of his sentence, which included the exposure to a term of probation. *See* Coles-Davila Decl., ECF No. 18-1, at 1. Even though petitioner previously had been the subject of an immigration hold, these were the first formal removal proceedings to commence against petitioner as a result of his conviction, prompted by his having suffered the additional consequence of probation revocation. *Id.* Shortly thereafter, petitioner consulted with Teresa Coles-Davila, an immigration attorney based in San Antonio, Texas. *Id.* Ms. Coles-Davila describes the following conversation with petitioner:

> I met with [petitioner] and advised him that his conviction of section 245(a)(2)[3] constituted an aggravated felony as a result of his state prison sentence of three years, which made him deportable and ineligible for nearly every form of discretionary relief that would apply to his circumstances. In addition, I explained, even if he was technically eligible for some forms of discretionary relief after conviction of an

---

[2] While the transcript is titled Modification of Probation Hearing, the court granted petitioner's motion to modify his initial sentence to read 364 days in county jail.

[3] "Any person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment." Cal. Pen. Code § 245(a)(2).

aggravated felony, such conviction made such relief practically impossible to obtain. He informed me that he believed he was no longer deportable after his sentence was modified to 364 days. I explained to him that his sentence for his violation of probation counted for purposes of determining whether his section 245(a)(2) conviction constituted an aggravated felony. It was clear to me from my conversation with [petitioner] that he was not aware, prior to our conversation, that his admission to a violation of probation and sentence on such violation had these devastating consequences.

*Id.* Ms. Coles-Davila avers that she subsequently represented petitioner in removal proceedings, which culminated in a July 19, 2011 decision by an Immigration Judge denying petitioner's application to prevent his deportation. Board of Immigration Appeals (BIA) Decision, ECF No. 1-4 at 70. On November 30, 2011, the federal Board of Immigration Appeals issued an opinion affirming this decision. *Id.* at 70-72.

More recently, as it became clear petitioner's options for remaining in this country were diminishing, petitioner returned to state court seeking further relief. On June 21, 2019, Sutter County Superior Court granted Mr. Khatkarh's 1473.7[4] motion in part, ordering withdrawal of the 2010 admission of the violation of probation and the three-year state prison sentence on the ground Mr. Khatkarh had been unable to meaningfully defend against the immigration consequences of the admission. Sutter Cty. Super. Ct. Mot. Hr'g, ECF No. 57–1 at 64.

On June 24, 2019, Mr. Khatkarh's current immigration attorney, Christopher Todd, filed a motion to reopen in the BIA, seeking to set aside the 2011 removal order on the ground that petitioner's conviction no longer constituted an aggravated felony because the total sentence was 364 days in light of the state trial court's granting Mr. Khatkarh's 1473.7 motion. *See* Request for Emergency Decision, ECF No. 57 at 6.

---

[4] California Penal Code section 1473.7(a)(1) provides: " A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for either of the following reasons: (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."

On February 13, 2020, the BIA denied the motion to reopen. Christopher Todd Decl. ECF No. 57 at 2–3.  While the BIA found the state court's 2019 order vacating the original prison sentence was effective for immigration purposes, it found Mr. Khatkarh's resulting sentence was 365 days, the original sentence imposed in the case on April 24, 2009, and not 364 days, which was the sentence as adjusted by the modification on June 21, 2009. BIA Decision, ECF No. 57–1 at 71.  The BIA also concluded the state court's granting of petitioner's 2009 motion and "resulting sentence modification, were [sic] not based on a procedural or substantive defect in the underlying criminal proceeding."  BIA Decision at 71 (relying on *Matter of Thomas and Matter of Thompson*, 27 I&N Dec. 674 (AG 2019)).

Since February 13, 2020, petitioner has been subject to deportation, required to regularly check in with ICE.  As noted, his immigration counsel believes he is likely to be deported when he checks in this week, without the granting of this habeas petition, which has been pending before this court for some time. Request for Emergency Decision at 7.

D.    Petitioner's Personal Background and Competency Issues

Petitioner is a citizen of India and has resided in the United States since he was three years old.  *Id.* at 14.  He attended public school in Yuba City, California from kindergarten through high school.  *Id.* His entire family is now in the United States, and he has no relatives or friends remaining in India.  *Id.*  Petitioner has a history of impaired intellectual functioning.  *Id.* at 15.  School evaluations indicate petitioner has suffered from severe intellectual deficits since he was a child. *Id.*  Beginning in 1999, tests revealing petitioner's intellectual and cognitive deficits qualified him for special education assistance.  *Id.*

On June 17, 2011, petitioner was examined by a clinical and forensic psychologist, Dr. Jack F. Ferrel, Ph.D.  Psychologist Report, ECF No. 1-2.[5]  Dr. Ferrel's assessment describes petitioner's "[e]ducational deficits, intelligence issues and cognitive processing problems [that] may compromise his decision-making efforts" and confirmed petitioners' test performances

---

[5] The record is not clear as to why this exam and the other exam described here were conducted at this time, although it may be petitioner's immigration attorney obtained the exams to establish a more robust record of his background for the immigration proceedings.

revealed he has "elements of a thinking disorder." *Id.* at 9. On July 15, 2011, petitioner was examined by a neuropsychologist, Jenyna M. Mercado, Ph.D., whose examination confirmed petitioner's condition meets the criteria for "borderline intellectual functioning." Neuropsychologist Report, ECF No. 1-2, at 16. Both psychological reports reference academic reports and medical records indicating petitioner was in a special education program from 2000 to 2008 while attending school. Pet. at 9. Moreover, Dr. Mercado observed petitioner's reading abilities were equivalent to third grade level. *Id.* at 23.

E. The Instant Action

On March 21, 2012, while serving his revocation sentence, petitioner, represented by his current habeas counsel Erin J. Radekin, filed a petition for writ of habeas corpus with the Sutter County Superior Court. ECF Nos. 1 at 3 & 1-3 at 49. On April 2, 2012, the superior court denied the petition without prejudice, finding petitioner failed to "establish a prima facie case for relief on habeas corpus," citing *In re Lawler*, 23 Cal. 3rd 190, 194 (1979)[6] and "failed to address the acknowledgment on the felony plea form (page 6, paragraph 19)." ECF No. 1 at 3; ECF No. 1-3 at 39.

On May 2, 2012, petitioner filed a second petition for writ of habeas corpus with the Sutter County Superior Court. ECF No. 1 at 4. On May 10, 2012, the superior court denied the second petition, again citing *In re Lawler*, and noting that petitioner's declaration referenced in his petition "was signed on August 6, 2009, well before [petitioner] was sentenced to prison." *Id.*

Petitioner's original criminal defense counsel, Mr. Sidhu, signed two declarations in support of the state habeas petitions, in which he explains he never discussed immigration consequences with petitioner. On February 15, 2012, Mr. Sidhu made the following declaration:

> I advised [petitioner] to accept the prosecution's offer that he plead to Penal Code section 245(a)(2) with a promise at the outset the he not be sentenced to state prison. In my discussions with Mr. Khatkarh regarding the advisability of accepting such offer rather than proceeding to trial, we did not discuss immigration

---

[6] In *Lawler*, the court reversed the grant of habeas relief by the San Diego County Superior Court due to petitioner's failure to establish a prima facie case for relief. *Id.*

consequences. . . I asked him to read [the plea and waiver form] and directed him to inform me if there was any portion of the form, he had questions about or did not understand . . . He did not ask me any questions about this advisement, and we had no discussions thereafter regarding immigration matters. I did not advise Mr. Khatkarh at any time that if he pled to a violation of section 245(a)(2) and received a sentence of a year or more- he would stand convicted of an aggravated felony and suffer mandatory removal and exclusion forever from the United States, and that he would be ineligible for most forms of discretionary relief from such consequences. I was not aware, at the time of Mr. Khatkhar's plea . . . that such conviction of such offense . . . would constitute an aggravated felony for immigration purposes . . . I was not aware that Mr. Khatkarh was not a citizen of the United States . . . There was no discussion of the immigration consequences of Mr. Khatkhar's plea.

Sidhu Decl. ¶¶ 2–6 ECF No. 1-3, at 42–43.

Mr. Sidhu's second declaration, dated April 24, 2012 provides:

To my knowledge, the only immigration advisement Mr. Khatkarh received prior or during his entry of no contest plea in case number CRF-09-0405 was the standard advisement provided in the plea and waiver form. . . I did check the boxes in the form corresponding to the advisement applicable to his particular circumstances, wrote out the factual basis and completed other parts of the form prior to providing it to Mr. Khatkhar. I then directed Mr. Khatkarh to review the form, insert his initials next to the boxes I had checked, then sign and date the form. . . I did not believe that he would suffer any of these [immigration] consequences. . . At no time did I ever advise Mr. Khatkarh that the aggregate sentence on the section 245(a)(2) conviction, including sentences for future violations of probation, would be considered for purposes of determining whether he has been sentenced to a year or more on a crime of violence and was thus an aggravated felon for federal immigration purposes.

Sidhu Sec. Decl. ¶¶ 2-4 ECF No. 1-4, at 67–68.

On March 25, 2013, petitioner filed a petition for a writ of habeas corpus with the California Court of Appeal for the Third Appellate District, Case No. C073368. ECF No. 1-3 at 51. Petitioner's declaration supporting this petition avers as follows, in pertinent part:

The prospect of permanent removal to India is terrifying to me. If I had known at the time of entering my no contest plea that there was the possibility of deportation and/or inadmissibility, I would not have entered such plea but would have instead proceeded to trial. At the time I entered the plea both my attorney and I believed I had meritorious defenses to present at trial and a realistic chance of prevailing in a jury trial. I pled only because I believed the

consequences of my plea were fairly minimal in terms of the additional incarceration time I faced . . . I would have accepted the cost and risk associated with trial to secure at least the possibility of avoiding such dire immigration consequences.

Khatkarh Decl. ECF No. 1-2, at 3 ¶ 8. The Attorney General filed an opposition to this petition. ECF No. 1-3 at 51. On July 2, 2013, the state appellate court summarily denied the petition without reaching the merits. *Id.* at 53.

On September 16, 2013, petitioner filed a petition for a writ of habeas corpus in the California Supreme Court. ECF No. 1 at 5; ECF No. 1-4 at 2. On October 23, 2013, the California Supreme Court denied the petition without comment. ECF No. 1-4 at 47.

Petitioner filed this federal action on January 13, 2014, while he was on parole for the 2009 conviction. Pet., ECF No. 1. On January 29, 2014, petitioner was released from parole. Resp. Mot., ECF No. 38 at 2. On March 31, 2017, the district court found the instant action was not barred by the statute of limitations and denied respondent's first motion to dismiss. Order, ECF No. 35 (decision reached on reconsideration). Respondent filed a second motion to dismiss based on lack of jurisdiction, arguing there was no longer a case or controversy to support jurisdiction in light of petitioner's discharge from parole. *See* ECF No. 38. On February 1, 2018, the court denied respondent's second motion to dismiss. *See generally* ECF No. 48. On February 15, 2018, respondent filed an answer; petitioner filed a traverse on March 23, 2018. Answer, ECF No. 49[7]; Traverse, ECF No. 54.

## II.     LEGAL STANDARD

An application in federal court for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

/////

---

[7] In its answer, respondent preserved the timeliness challenge raised in its first motion to dismiss. Answer at 11 ¶ 2. The court declines to revisit the issue in light of its prior ruling.

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011)); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640

1   (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

2   grant the writ if the state court identifies the correct governing legal principle from the Supreme

3   Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. [8]

4   *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams v. Taylor*, 529 U.S. at 413; *Chia v.*

5   *Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not

6   issue the writ simply because that court concludes in its independent judgment that the relevant

7   state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

8   that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. at 411; *see also Schriro*

9   *v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal

10  habeas court, in its independent review of the legal question, is left with a firm conviction that the

11  state court was erroneous." (internal quotations and citation omitted)).  "A state court's

12  determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

13  jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*,

14  562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

15  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

16  must show that the state court's ruling on the claim being presented in federal court was so

17  lacking in justification that there was an error well understood and comprehended in existing law

18  beyond any possibility for fair-minded disagreement."  *Richter*, 562 U.S. at 103.

19          If the state court's decision does not meet the criteria set forth in § 2254(d), a

20  reviewing court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v.*

21  *Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th

22  Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

23  § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

24  considering de novo the constitutional issues raised.").

25  /////

26  _____

[8]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
27  overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
28  384 F.3d 628, 638 (9th Cir. 2004)).

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99–100 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 298 (2013) (citing *Richter*, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state

12

court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006).

III.     DISCUSSION

Petitioner contends the circumstances of his conviction fall squarely within the ambit of *Padilla v. Kentucky*, 559 U.S. 356 (2010) and its progeny[9] "requiring competent counsel to advise a defendant entering a guilty or no contest plea of the particular immigration consequences of such a plea." Pet. at 31. The *Padilla* Court recognized the "importance of accurate legal advice for noncitizens accused of crimes has never been more important . . . as a matter of federal law, deportation is an integral part of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Padilla*, 559 U.S. at 356; *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 322 (2001) ("Preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence"). Thus, before deciding whether to plead guilty, "a non-citizen defendant is entitled to the effective assistance of competent counsel." *Id.*

Here, the parties do not dispute that *Padilla v. Kentucky*, 559 U.S. 356 (2010), was decided at the time the Sutter County Superior Court denied petitioner habeas relief. Reply at 3. Because petitioner did not file an appeal following the imposition of his three-year probation

---

[9] While petitioner references the implications of the later cases of *United States v. Rodriguez-Vega*, 797 F.3d 781, 791 (9th Cir. 2015) and *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011), in this decision this court only relies on the U.S. Supreme Court decisions in effect at the times relevant to petitioner's case.

13

revocation sentence on April 2, 2010, for retroactivity purposes his sentence became final on June 2, 2010. Order, ECF No. 26 at 7; *see also* Resp't Mot., ECF No. 12, at 3. Thus, his conviction became final after *Padilla* was decided on March 31, 2010. Resp't. Mot. at 3; *cf. Chaidez v. United States*, 568 U.S. 342, 358 (2013) ("defendants whose convictions became final prior to *Padilla* . . . cannot benefit from its holding."). Given the chronology of key events here, and the date of the *Padilla* decision, there is no *Teague* issue. *See Teague v. Lane*, 489 U.S. 288, 301 (1989) (a person whose conviction is final may not benefit from a new rule of criminal procedure on collateral review; "A case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.").

As explained below, in light of *Padilla*, the court finds petitioner satisfies the familiar two-part *Strickland v. Washington* test so as to warrant habeas relief due to ineffective assistance of counsel.

A.     <u>Last Reasoned Decision</u>

The parties agree that the May 10, 2012 decision by the Sutter County Superior Court is the last reasoned state court decision. Answer at 27; Reply at 3. The superior court denied the petition because "[p]etitioner has failed to establish a prima facie case for relief on habeas corpus (*In re Lawler*[,] 23 Cal. 3d 190, 194)." Order Denying Petition, ECF No. 1-3 at 48. The state appellate courts denied the petitions subsequently presented to them without opinion or citation to authority. As noted above, because the state superior court reached its decision on the merits but provided no developed reasoning to support its conclusion, this court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). In doing so, it bears in mind that "[i]ndependent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Here, because there is no reasoned decision, petitioner bears the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

B.    <u>Petitioner's Ineffective Assistance of Counsel Claim</u>

Petitioner claims he was denied his right to the effective assistance of counsel because his defense attorney

> failed to determine [petitioner's] immigration status, failed to investigate the immigration consequences of a no contest plea to California Penal Code section 245, subdivision (a)(2) for [petitioner], and failed to advise [petitioner] that such offense would constitute an aggravated felony if [petitioner] was sentenced to a year or more, either initially or in the aggregate after violations of probation or parole, making [petitioner] deportable, inadmissible, ineligible for all forms of discretionary relief from deportation, and subject to several other devastating immigration consequences.

Pet. at 36.

Respondent argues there is no plausible argument that petitioner has demonstrated defense counsel's overall performance was not "active and capable advocacy." Answer, ECF No. 49, at 24. Respondent contends the trial court's factual findings demonstrate that a fairminded jurist could find petitioner's state court ineffective assistance of counsel claim fails, because plaintiff signed the Plea Form his counsel presented to him and initialed the text in the section labeled "Consequences of My Plea," which reads "I understand that if I am not a citizen of the United States, I will be deported from the country, denied citizenship, and denied re-entry into the United States." *Id.* at 24–25 (citing Felony Plea Form at 43). Respondent points out that petitioner did not acknowledge any other consequences on that page of the form and initialed each of the items that did apply to his case; the initials in the boxes confirmed he understood and agreed with such information. *Id* at 25. Furthermore, by signing the form, petitioner affirmed that he read it, or had it read to him, and discussed each item with defense counsel. *Id.* In addition, defense counsel signed the Plea Form affirming that he reviewed the form with petitioner, explaining each item on the form, as well as the consequences of the plea. *Id.* Respondent further argues that based on the Plea Form alone, a fairminded jurist could find petitioner could not establish that counsel did not advise him of the immigration consequences of his plea. *Id.*

Petitioner replies that to the extent the state court's decision comprises a factual determination that petitioner's and defense counsel's assertions regarding the circumstances of

15

1  petitioner's signing the Plea Form are not credible, that decision constitutes an unreasonable

2  determination of the facts in light of the evidence presented.  Reply, ECF No. 54 at 6-9.  Further,

3  petitioner argues the state court's determination that defense counsel was not ineffective at the

4  time of the plea is an unreasonable application of Supreme Court precedent, because the record

5  demonstrates petitioner was not advised of the clear, actual and specific immigration

6  consequences of his plea, defense counsel's incompetency went beyond a mere failure to advise

7  and no fairminded jurist would find petitioner was not prejudiced by defense counsel's

8  incompetency.  *Id.* at 9–15.

9                  1.   <u>Legal Standards Applicable to Petitioner's IAC Claim</u>

10                       a.  *Strickland* Generally

11         The Sixth Amendment of the United States Constitution as applied to the states

12  through the Fourteenth Amendment guarantees a state criminal defendant the right to effective

13  assistance of counsel at trial.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  To warrant habeas relief due

14  to ineffective assistance of counsel, a petitioner must demonstrate that: (1) counsel's performance

15  was deficient; and (2) the deficient performance prejudiced his defense.  *Strickland v.*

16  *Washington*, 466 U.S. 668, 687-93 (1984); *see also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003)

17  (per curiam) (Sixth Amendment right is denied when a defense attorney's performance falls

18  below an objective standard of reasonableness and thereby prejudices the defense) (citations

19  omitted).  As both prongs of the *Strickland* test must be satisfied in order to establish a

20  constitutional violation, failure to satisfy either prong requires that a petitioner's ineffective

21  assistance of counsel claim be denied.  *Strickland*, 466 U.S. at 687, 697 (no need to address

22  deficiency of performance if lack of prejudice is obvious); *Rios v. Rocha*, 299 F.3d 796, 805 (9th

23  Cir. 2002) (failure to satisfy either prong of *Strickland* test obviates need to consider the other).

24  The first prong of the *Strickland* test, deficient performance, requires a showing that counsel's

25  performance fell "outside the wide range of professionally competent assistance." *Strickland*,

26  466 U.S. at 690.  "It is quintessentially the duty of counsel to provide her client with available

27  advice about an issue like deportation and the failure to do so clearly satisfies the first prong of

28  the *Strickland* analysis." *Padilla*, 559 U.S. 356 at 371 (internal quotation marks omitted).

A petitioner bears the heavy burden of demonstrating that counsel's assistance was not reasonable or the result of sound strategy. *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001); *see also Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) ("Because this case involves a claim of ineffective assistance of counsel, there is an additional layer of deference to the choices of trial counsel").

The second prong of the *Strickland* test, prejudice, requires a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694-95. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.*

### b. *Strickland* in the Guilty Plea Context

The *Strickland* standard applies in the plea context. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Due process requires that a guilty plea be knowing, intelligent, and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *see also Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006). In determining the validity of a guilty plea, courts look to "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (citation & quotation marks omitted). A guilty plea based on an attorney's advice may be involuntary if the attorney rendered ineffective assistance. *Id.* at 56–57. Specifically, the *Strickland* "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see also Washington v. Lampert*, 422 F.3d 864, 873 (9th Cir. 2005).

### c. Guilty Pleas Entered by Noncitizen Defendants

In the context of noncitizen pleas, the Supreme Court has held "that the Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea." *Chaidez v. United States*, 568 U.S. 342, 344 (2013) (observing "[t]he *Strickland v. Washington* test for assessing ineffective assistance claims applies

17

in diverse contexts" and citing *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010)).  In *Padilla*, the Court expressly held that when a defendant is not a United States citizen and may sustain immigration consequences as a result of a negotiated plea, a defense attorney's failure to inform a client of the immigration consequences of the plea deal constitutes ineffective assistance of counsel in violation of the Sixth Amendment: "[C]ounsel must inform [his] client whether his plea carries a risk of deportation." *Padilla*, 559 U.S. at 374. Even in cases where the deportation consequences of a particular plea are unclear or uncertain, a criminal defense attorney still must advise his noncitizen client that the pending criminal charges "may carry a risk of adverse immigration consequences." *Id.* at 369.  This "objective standard of reasonableness" is 'linked to the practice and expectations of the legal community," therefore the "measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* When immigration issues are at play, professional norms require counsel to "advise her client regarding the risk of deportation." *Id.* at 367.  This standard exists because of the severity of the consequences: "The severity of deportation—the equivalent of banishment or exile—only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Id.* at 373–74 (citation and quotation marks omitted

        2.    <u>Analysis</u>

        a.    <u>Deficient Performance</u>

Petitioner specifically alleges his trial attorney "failed to determine [his] immigration status, failed to investigate the immigration consequences of a no contest plea to California Penal Code section 245, subdivision (a)(2) for [him], and failed to advise [him] that such offense would constitute an aggravated felony if [he] was sentenced to a year or more."  Pet. at 36.  The factual record regarding trial counsel's conduct consists of the two declarations by trial counsel, which detail his interactions with petitioner.  Mr. Sidhu straightforwardly admits he "did not discuss immigration consequences" with petitioner.  Sidhu Decl. ¶ 2.  Instead, counsel "asked [petitioner] to read [the plea and waiver form] and directed [petitioner] to inform [him] if there was any portion of the form, [petitioner] had questions about or did not understand." *Id.* ¶ 3.  Counsel concedes he "did not advise [petitioner] at any time that if he pled to a violation of

18

section 245(a)(2) and received a sentence of a year or more he would stand convicted of an aggravated felony and suffer mandatory removal and exclusion forever from the United States, and that he would be ineligible for most forms of discretionary relief from such consequences." *Id.* ¶ 4. Moreover, counsel admits that "to [his] knowledge the only immigration advisement [petitioner] received prior or during his entry of no contest plea in case number CRF-09-0405 was the standard advisement provided in the plea and waiver form." Sidhu Sec. Decl. ¶ 2. In fact, counsel describes how he was the person who "check[ed] the boxes in the form corresponding to the advisement applicable to [petitioner's] particular circumstances, [and] wrote out the factual basis and completed other parts of the form prior to providing it to [petitioner]. [Counsel] then directed Mr. Khatkarh to review the form, insert his initials next to the boxes [counsel] had checked, then [instructed petitioner to] sign and date the form." *Id.* Petitioner's signature next to the "X" on the Plea Form is consistent with this description of what happened at the time. Plea Form at 46. Petitioner himself asserts in his declaration that "[he] pled only because [he] believed the consequences of [his] plea were fairly minimal in terms of the additional incarceration time [he] faced." Khatkarh Decl. ¶ 8.

Respondent counters simply that "the existence of a constitutional violation, rendering the resulting custody illegal, would not have been apparent to all reasonable jurists based on the law extant at the time the conviction became final on direct appeal." Answer at 12 (internal quotation marks omitted) (quoting *Beard v. Banks*, 542 U.S. 406, 413 (2004); *Teague v. Lane*, 489 U.S. 288 (1989)).

As the Supreme Court has made clear, however, "where the law is 'succinct, clear, and explicit' that the conviction renders removal virtually certain, counsel must advise his client that removal is a virtual certainty." *Padilla*, 559 U.S. at 368–69. "Where the immigration statute or controlling case law expressly identifies the crime of conviction as a ground for removal, the deportation consequence is truly clear." *Id.* at 69. In *Padilla*, for example, "the terms of the relevant immigration statute [were] succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Id.* at 68 (citing 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt

19

to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.").

Here, as in *Padilla*, the deportation consequences of petitioner's conviction are made express in the applicable statutes. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("any alien who is convicted of an aggravated felony is deportable"); Immigration and Nationality Act (INA) § 101(a)(43) ("aggravated felony" includes "a crime of violence (as defined in 18 U.S.C. § 16) for which the term of imprisonment is at least one year"); 8 U.S.C. § 1101 (a)(43)(F). Title 18 U.S.C. § 16 defines a crime of violence as: "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. 18 U.S.C. § 16. Under a plain reading of California Penal Code section 245(a)(2), the elements of assault with a firearm (an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another with a firearm) satisfy the requirements of Title 18 U.S.C. § 16 subsection (a) and (b). It therefore should have been clear at the time of petitioner's plea that section 245(a)(2) was a crime of violence, enough to put counsel on notice that a sentence of a year or more would constitute an aggravated felony under federal immigration law.[10]

"[W]hen the deportation consequence is truly clear, as it was here, the duty to give correct advice is equally clear." *Padilla,* 559 U.S. 356 at 357. Because petitioner's sentence only became final on June 2, 2010, after *Padilla* was decided, he benefits from its holding. *See Teague*, 489 U.S., at 307; Resp't Mot. at 3. Thus, it was his trial counsel's duty to explain to petitioner that his no contest plea, and subsequent conviction, "made his deportation virtually mandatory." *Padilla*, 559 U.S. at 359; *see also id.* at 368–69 (explaining "Padilla's counsel could have easily

---

[10]  In *United States v. Heron-Salinas,* 566 F.3d 898, 899 (9th Cir. 2009), the Ninth Circuit held California Penal Code section 245(a)(2) is categorically a "crime of violence" and an "aggravated felony" for immigration purposes.

1　determined that his plea would make him eligible for deportation simply from reading the text of

2　the statute . . ." (citing 8 U.S.C. § 1227(a)(2)(B)(i))).

3　　　　The court finds the deportation consequences of petitioner's plea were clear at the

4　time petitioner pled guilty, and therefore his trial counsel had an affirmative duty to advise

5　petitioner that a guilty plea would render his "deportation virtually mandatory."  Based on the

6　declarations of Mr. Sidhu, the only conclusion possible is that he did not provide such an

7　advisement. Sidhu Decl. ¶¶ 2–6.  In this respect, Mr. Sidhu's performance fell below the objective

8　standard of reasonableness required here and therefore was constitutionally deficient.[11]

9　　　　　　　　　b.　　Prejudice

10　　　　To satisfy the second prong of the *Strickland* test "the defendant must show that

11　there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty

12　and would have insisted on going to trial."  *Hill*, 474 U.S. at 58–59. "[T]o obtain relief on this

13　type of claim, a petitioner must convince the court that a decision to reject the plea bargain would

14　have been rational under the circumstances."  *Padilla*, 559 U.S. at 372. "Where ineffective

15　assistance leads a petitioner to accept a plea bargain, a different result means that 'but for

16　counsel's errors, petitioner would either have gone to trial or received a better plea bargain."

17　*United States v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004).

18　　　　 In support of the proposition that trial counsel could have obtained a better plea

19　deal, petitioner points to evidence suggesting he had a minimal role in the crime that led to his

20　original criminal conviction.  *See* Sutter Cty. Super. Ct. Mot. Hr'g, ECF No. 57–1 at 31–65

21　(explaining petitioner was not part of the verbal dispute between the two groups of young men,

22　petitioner's associates and the victims, that occurred at the convenience store immediately before

23　the shooting, and he was not the shooter).  Petitioner also contends that, had he proceeded to trial

24　on the original charges, he would have been entitled to present a defense of voluntary intoxication

25

26　[11]　　While the court need not reach the question of petitioner's intellectual functions, assuming without deciding that petitioner has intellectual limitations, it is incumbent under the Constitution

27　to ensure petitioner is not "left to the mercies of incompetent counsel."  *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

28

to the charge of attempted murder in count one and present evidence he had no motive to shoot at the victims. *Id.* at 39. Further, he notes the victims were not cooperative with the police and were apparently not hurt in the incident. *Id.* Petitioner argues these facts support the inference that the prosecution would have had difficulty in proving its case at trial and therefore amenable to an alternative plea agreement that did not carry one or more of the immigration consequences of a conviction under section 245(a)(2). *Id.*

Lastly, petitioner emphasizes a plea agreement could have been structured in a number of ways to avoid petitioner's pleading to an aggravated felony. *Id.* at 40. But his trial counsel's lack of awareness that he was not a citizen of the United States, Sidhu Decl. ¶ 5, meant there was no attempt on his part to structure a plea agreement that would avoid immigration consequences. *Id.* Respondent counters that "state [habeas] courts consistently rejected these claims, perhaps relying on petitioner's signature and initials on the Change of Plea form indicating he understood he would be deported as a consequence of his plea." Answer at 10. Moreover, to the extent this court could find petitioner did not learn of the immigration consequences of his plea until after an immigration hold was placed on him during his first jail term in April 2009, respondent contends petitioner is still not entitled to relief because "some fairminded jurist could find that Mr. Sidhu successfully obtained a result that alleviated any immigration consequences for Petitioner. Specifically, Mr. Sidhu filed a motion to modify the terms of Petitioner's probation by reducing his jail term by one day, to 364 days total." *Id.* at 28. Lastly, respondent contends "because the plea agreement included a promise of no initial state prison sentence (Sent'g Tr. at 3), there were no certain immigration consequences of which Mr. Sidhu should have advised Petitioner." *Id.*

In his reply, petitioner notes "respondent does not dispute Mr. Khatkarh was never advised that any sentence on a violation of probation would be aggregated with the original sentence for aggravated felony purposes." Reply at 13. Indeed, petitioner was not advised of immigration consequences prior to entering his plea or prior to admitting the violation of probation. *Id.* Petitioner argues it is not reasonable for the court to find Mr. Khatkarh should have on his own inferred these consequences upon learning he had an immigration hold or that

22

modifying the sentence to 364 days made his conviction not an aggravated felony. *Id.* The court agrees.

Petitioner avers without equivocation that remaining in the United States is his paramount concern and he would have expressed this concern more emphatically at the time he pled guilty had he known the removal consequences of his plea. Petitioner declares, "The prospect of permanent removal to India is terrifying to me. If I had known at the time of entering my no contest plea that there was the possibility of deportation and/or inadmissibility, I would not have entered such plea but would have instead proceeded to trial." Khatkarh Decl. ¶ 8. At the time of the plea, petitioner thought he "had meritorious defenses to present at trial and a realistic change of prevailing in a jury trial . . . and would have accepted the cost and risk associated with trial to secure at least the possibility of avoiding such dire immigration consequences. *Id.* His personal circumstances at the time of both his plea and sentencing are consistent with his position that he placed a high priority on maintaining his lawful status in this country. As noted above, petitioner "would have accepted the cost and risk associated with trial to secure at least the possibility of avoiding such dire immigration consequences" because he has resided in the United States since the age of three years old. *Id.*; *see also* Pet. at 14. His entire family, including his mother, father and sister, reside in the United States and petitioner has no relatives or friends remaining in India. Pet. at 14. In addition, petitioner is completely dependent upon his family for support. *Id.*

On this record, the court finds petitioner has established that, absent his trial counsel's deficient performance, there was a reasonable probability he would have taken his case to trial if he could not secure a plea deal that protected him against deportation. Thus, the court finds petitioner satisfies the two-part *Strickland* test by showing trial counsel's performance was deficient, and but for that deficient performance petitioner would have proceeded to trial, assuming he could not have obtained a better plea deal.

IV.     Respondent's Alternative Argument

In its answer, respondent takes the position as it did in a prior motion to dismiss that the court lacks jurisdiction because the named respondent no longer has day to day control

over petitioner and cannot produce the body of petitioner. Answer at 19. Respondent contends that petitioner and respondent are legal strangers, and respondent has no stake in this litigation. *Id.* Respondent requests that the court defer briefing while it dismisses the Warden as the respondent and gives adequate time to determine the appropriate respondent that could provide petitioner relief. *Id.* at 33.

Petitioner denies that this court lacks jurisdiction and argues that this issue has been litigated and adversely decided against respondent. ECF No. 54 at 1. Petitioner is correct. In *Bailey v. Hill*, 599 F.3d 976 (9th Cir. 2010), the court held that "a nexus between the petitioner's claim and the unlawful nature of his custody" is part of § 2254(a)'s jurisdictional requirement that a habeas petitioner be "in custody" at the time the habeas petition is filed. *Bailey*, 599 F.3d at 980. Nothing in the *Bailey* decision changed the fundamental rule that this jurisdictional requirement attaches at the time the petition is filed and that subsequent release from custody does not deprive the federal court of jurisdiction. *See id.* at 979 ("The petitioner must be in custody at the time the petition is filed, *see Carafas v. LaVallee*, 391 U.S. 234, 238 (1968), but the petitioner's 'subsequent release from custody does not itself deprive the federal habeas court of its statutory jurisdiction.' *Tyars v. Finner*, 709 F.2d 1274, 1279 (9th Cir. 1983)."). A habeas petition does not become moot upon a petitioner's release from custody if the petition challenges a conviction to which "specific, concrete collateral consequences" have attached. *Spencer v. Kemna*, 523 U.S. 1, 9 (1998); *see also Fiswick v. United States,* 329 U.S. 211, 221–23 (1946) (other disabilities or burdens may flow from the judgment, improperly obtained, if court dismisses case as moot and allows the conviction to stand and would render petitioner liable to deportation and denial of naturalization).

Essentially, respondent contends the only remedy available in federal habeas corpus proceedings under 28 U.S.C. § 2254 is release from custody. Answer at 16 ("There is only one claim that § 2554(a) [sic] allows: that custody is illegal. Consequently, despite a presumably valid state conviction, collateral consequences flowing therefrom, and the supreme court's [sic] hypothesis that a habeas petitioner may be entitled to more remedy than just release from custody, a petitioner failing to allege the only claim available (that current custody is illegal) has no

standing, and the federal court is powerless to provide a remedy.").  Respondent's contention, which would require this court to depart from the well-established rule that a federal habeas corpus challenge to a state criminal conviction is not mooted by release from custody if collateral consequences attach to the conviction, is simply incorrect, as this court previously has observed in denying the prior motion to dismiss. *See* Order, ECF No. 48 and cases cited therein. Moreover, the Rules Governing Habeas Corpus Cases Under Section § 2254 provide for the naming of the Attorney General as the proper respondent when petitioner, as here, is no longer incarcerated or on probation or parole and so the court has made this substitution as noted above.  *See* note 1 *supra*.

V.     <u>CONCLUSION</u>

For the reasons discussed, the court grants petitioner's writ of habeas corpus, ECF No. 1.  Petitioner's March 20, 2009 conviction is VACATED.

IT IS SO ORDERED.

DATED: March 5, 2020.

CHIEF UNITED STATES DISTRICT JUDGE